2020R00144/MPP/SW/SN

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

2021 SEP 15 PM 4: 52

CLERK'S OFFICE
AT BALTIMORE

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. _LKG_ |
| v. | _TD_ DEPUTY  _21CR_ |
| | _360_ |
| JAMES WILLIAM WILSON, JR. | (18 U.S.C. § 1349 – Conspiracy; 18 U.S.C. |
| MAUREEN ANN WILSON, | § 1341 – Mail Fraud; 18 U.S.C. § 1343 – |
| | Wire Fraud; 18 U.S.C. § 1956(h) – Money |
| Defendants. | Laundering Conspiracy; 18 U.S.C. |
| | § 1956(a) – Concealment Money |
| | Laundering; 18 U.S.C. § 1957 – Spending |
| | Money Laundering; 26 U.S.C. § 7206 – |
| | Filing a False Tax Return; 18 U.S.C. |
| | § 1028A – Aggravated Identity Theft; 18 |
| | U.S.C. § 2 – Aiding and Abetting; 18 U.S.C. |
| | §§ 981(a)(1)(C), 982(a)(1), 21 U.S.C. § |
| | 853(p), 28 U.S.C. § 2461(c) – Forfeiture) |

### AMENDED INDICTMENT

The Grand Jury for the District of Maryland charges that:

### COUNT 1
### Conspiracy to Commit Mail and Wire Fraud
### JAMES WILSON, MAUREEN WILSON

At all times relevant to this Indictment:

### The Parties

1.    **JAMES WILLIAM WILSON, JR. ("JAMES WILSON")** was a resident of

Owings Mills, Maryland.  **JAMES WILSON** was an insurance producer or broker, licensed by

the State of Maryland to sell life insurance, and he owned an insurance business, AWA, Inc.

2.    **MAUREEN ANN WILSON ("MAUREEN WILSON")** was a resident of

Owings Mills, Maryland.  **MAUREEN WILSON** was and is **JAMES WILSON's** spouse. From

approximately 1986 to 2016, **MAUREEN WILSON** was a registered stockbroker and held a

Series 7 license to sell securities.

1

2020R00144/MPP/SW/SN

**<u>Life Insurance</u>**

3.    A life insurance policy is a contract between a life insurance company and an insured. A life insurance policy requires the insurance company to pay money to the beneficiary of the policy, who is typically a relative of the insured, upon the insured's death. This sum of money is referred to as the death benefit. To keep the policy in force, the policy owner makes periodic payments, commonly referred to as premiums, to the insurance company throughout the life insurance policy period.

4.    Life insurance companies utilize industry principles to determine whether to issue a life insurance policy and the amount of money that they will charge for premiums. Life insurance companies determine the amount of coverage to extend to the insured by determining the amount of money that an insured's beneficiaries need in the event of the insured's death. When insurance companies determine the death benefit to offer to an applicant, the life insurance company relies upon the applicant's representations about his or her financial condition.

5.    In addition to considering the financial condition of the applicant, life insurance companies also consider the applicant's health. Factors such as weight, age, sex, and smoking history may impact the amount of money that life insurance companies will charge for premiums.

6.    Insurance producers or brokers are licensed to sell and negotiate various forms of insurance, including life insurance, offered by an insurance company. An insurance producer or broker may work for one insurance company or may sell life insurance policies for multiple insurance companies.

7.    When an insured dies, a beneficiary submits a claim to the life insurance company for the life insurance proceeds. Typically, the claim process involves the beneficiary completing a form with the beneficiary's identifying information and a description of the insured's cause of

2

2020R00144/MPP/SW/SN

death and personal information. Usually, the life insurance company will also require a copy of the insured's death certificate. Once the insurance company receives the documentation, the insurance company processes the death claim and pays the appropriate amount to the beneficiary.

### The Scheme and Artifice to Defraud

8.      From at least in or about 1996, and continuing thereafter until the present, in the District of Maryland and elsewhere, the defendants,

**JAMES WILSON and
MAUREEN WILSON,**

together with each other and with certain other co-schemers known and unknown to the members of the Grand Jury, did knowingly devise and intend to devise a scheme and artifice to defraud:

      a.  insurance companies as to material matters, and to obtain and to attempt to obtain by means of materially false and fraudulent pretenses and representations, money and property of those insurance companies, in excess of $20 million, more or less; and

      b.  individual investors as to material matters, and to obtain and to attempt to obtain by means of materially false and fraudulent pretenses and representations, money and property of those individual investors to pay insurance premiums.

### The Conspiracy to Execute the Scheme and Artifice to Defraud

9.      From at least in or about 1996, and continuing until the present, in the District of Maryland and elsewhere, the defendants,

**JAMES WILSON and
MAUREEN WILSON,**

did knowingly and willfully conspire, combine, confederate, and agree with each other and with

2020R00144/MPP/SW/SN

other co-conspirators known and unknown to the members of the Grand Jury, to commit mail fraud and wire fraud, that is, to knowingly execute and attempt to execute the Scheme and Artifice to Defraud through the use of the mail and interstate wires in violation of Title 18, United States Code, Sections 1341 and 1343.

**The Manner and Means of the Conspiracy and the Scheme and Artifice to Defraud**

10.     The manner and means by which the defendants and their co-conspirators and co-schemers furthered the Conspiracy and the Scheme and Artifice to Defraud included, among other things, the following:

a.   fraudulently procuring more than 30 life insurance policies, with a combined total death benefit of more than $20 million, for applicants by materially misrepresenting the health and wealth of the applicants;

b.   making material misrepresentations on life insurance applications about:

i.   the health of the applicant, often writing that that the applicant was a non-smoker when the applicant was a smoker;

ii.   the wealth of the applicant, often falsely inflating the applicant's net worth and income;

iii.   the amount of an applicant's existing life insurance coverage;

c.   directing another insurance broker to submit life insurance applications to conceal that **JAMES WILSON** prepared and assisted in preparing the policy applications;

d.   fraudulently obtaining money from:

i.   victim-investors to pay the premiums on the life insurance policies;

ii.   a trust for which **JAMES WILSON** served as trustee, to pay premiums on

2020R00144/MPP/SW/SN

life insurance policies;

e. telling the victim-investors that their money was being used as either a loan or an investment that would be repaid with interest, when, in fact, the money was used to pay premiums on fraudulently-obtained life insurance policies;

f. using forged signatures to make themselves and nominees they controlled, including their friends and family members, the owners and beneficiaries of the policies;

g. identifying themselves and the nominees they controlled as members of the insured's family when, in fact, they had no relation to the insured;

h. creating email addresses, purporting to be the email addresses of other people, to communicate with insurance companies pretending to be those other people;

i. possessing a scanned copy of Nominee 1's driver's license, with a forged signature imposed on the scanned copy of the driver's license;

j. establishing joint bank accounts with nominees to access life insurance proceeds paid to the nominees;

k. submitting claims for death benefits on behalf of themselves and other nominees, and obtaining in excess of $8 million for themselves.

18 U.S.C. § 1349
18 U.S.C. § 2

2020R00144/MPP/SW/SN

## COUNTS 2 through 4
## Mail Fraud
## JAMES WILSON

1.      The allegations in paragraphs 1 through 8 and 10 of Count One are realleged and incorporated herein by reference.

2.      On or about the dates set forth below, in the District of Maryland and elsewhere, the defendant,

### JAMES WILSON,

for the purpose of executing the aforesaid Scheme and Artifice to Defraud, together with certain co-schemers known and unknown to the members of the Grand Jury, did knowingly cause to be delivered by mail or private commercial interstate carrier the following matters:

| Count | Date of Mailing | Description of Mailing |
|---|---|---|
| 2 | March 13, 2018 | **JAMES WILSON** caused to be delivered by mail or private commercial interstate carrier claims for death benefits on behalf of himself and four other beneficiaries to American General Life Insurance Co. for Policy No. YM00339388, which insured the life of T.S.<br><br>American General subsequently paid $1,353,185.27 in death benefits, including $460,082.99 paid to **JAMES WILSON**. |
| 3 | February 21, 2018 | **JAMES WILSON** caused to be delivered by mail or private commercial interstate carrier a claim for death benefits under the name of a nominee, Nominee 1, to Nationwide Life Insurance for Policy No. N101712630, which insured the life of T.S.<br><br>Nationwide subsequently transferred $1,504,981.71 into BB&T Bank account x4546 held jointly by **JAMES WILSON** and Nominee 1. |

2020R00144/MPP/SW/SN

| 4 | October 25, 2019 | **JAMES WILSON** caused to be delivered by mail or private commercial interstate carrier a claim for death benefits under the name of a nominee, Nominee 2, to Nationwide Life Insurance for Policy No. N101902890, which insured the life of J.S.<br><br>Nationwide subsequently deposited $2,007,918.68 into BB&T Bank account x1648 held jointly by **JAMES WILSON** and Nominee 2. |
|---|---|---|

18 U.S.C. § 1341
18 U.S.C. § 2

2020R00144/MPP/SW/SN

## COUNTS 5 through 9
## Mail Fraud
## JAMES WILSON, MAUREEN WILSON

1.     The allegations in paragraphs 1 through 8 and 10 of Count One are realleged and incorporated herein by reference.

2.     On or about the dates set forth below, in the District of Maryland and elsewhere, the defendants,

## JAMES WILSON and
## MAUREEN WILSON,

for the purpose of executing the aforesaid Scheme and Artifice to Defraud, together with certain co-schemers known and unknown to the members of the Grand Jury, did knowingly cause to be delivered by mail or private commercial interstate carrier the following matters:

| Count | Date of Mailing | Description of Mailing |
|---|---|---|
| 5 | February 21, 2018 | **JAMES WILSON** and **MAUREEN WILSON** caused to be delivered by mail or private commercial interstate carrier a claim for death benefits to AXA Life Insurance for Policy No. 157201709, which insured the life of T.S. <br><br> AXA subsequently paid $1,002,625.13 to **MAUREEN WILSON**. |
| 6 | February 21, 2018 | **JAMES WILSON** and **MAUREEN WILSON** caused to be delivered by mail or private commercial interstate carrier a claim for death benefits to John Hancock for Policy No. 93154697, which insured the life of T.S. <br><br> John Hancock subsequently paid $2,330,977.00 to **MAUREEN WILSON**. |
| 7 | March 9, 2018 | **JAMES WILSON** and **MAUREEN WILSON** caused to be delivered by mail or private commercial interstate carrier a claim for death benefits to Lincoln Benefit Life Insurance Co. for Policy No. 01T1633920, which insured the life of T.S. |

2020R00144/MPP/SW/SN

| | | Lincoln subsequently paid $50,658.29 to **MAUREEN WILSON**. |
|---|---|---|
| 8 | February 26, 2018 | **JAMES WILSON** and **MAUREEN WILSON** caused to be delivered by mail or private commercial interstate carrier a claim for death benefits to Midland Life Insurance Co. for Policy No. 1502677788, which insured the life of T.S.<br><br>Midland subsequently paid $99,336.00 to **MAUREEN WILSON**. |
| 9 | February 18, 2018 | **JAMES WILSON** and **MAUREEN WILSON** caused to be delivered by mail or private commercial interstate carrier a claim for death benefits to Fidelity Guaranty Life Insurance for Policy No. 03059385, which insured the life of T.S.<br><br>Fidelity subsequently paid $152,933.53 to **MAUREEN WILSON**. |

18 U.S.C. § 1341
18 U.S.C. § 2

2020R00144/MPP/SW/SN

## COUNTS 10 through 11
## Wire Fraud
## JAMES WILSON

1.      The allegations in paragraphs 1 through 8 and 10 of Count One are realleged and incorporated herein by reference.

2.      On or about the dates set forth below, in the District of Maryland and elsewhere, the defendant,

### JAMES WILSON,

for the purpose of executing the aforesaid Scheme and Artifice to Defraud, together with certain co-schemers known and unknown to the members of the Grand Jury, did transmit and cause to be transmitted by means of wire communication in interstate commerce writings, signs, signals, and sounds, namely:

| Count | Date of Wire | Description of Wire |
|-------|--------------|---------------------|
| 10 | October 29, 2018 | **JAMES WILSON** transmitted or caused to be transmitted via facsimile from his home in Owings Mills, Maryland to Nationwide Life Insurance in Columbus, Ohio, a change of beneficiary form making **MAUREEN WILSON** the 100% beneficiary of Nationwide Policy No. N101902890, which insured the life of J.S. |
| 11 | June 25, 2019 | **JAMES WILSON** transmitted or caused to be transmitted via facsimile from a FedEx store located in Maryland to Nationwide Life Insurance in Columbus, Ohio, a change of beneficiary form making Nominee 2 the 100% beneficiary of Nationwide Policy No. N101902890, which insured the life of J.S. |

18 U.S.C. § 1343
18 U.S.C. § 2

10

2020R00144/MPP/SW/SN

## COUNTS 12 through 13
## Wire Fraud
## JAMES WILSON, MAUREEN WILSON

1.    The allegations in paragraphs 1 through 8 and 10 of Count One are realleged and incorporated herein by reference.

2.    On or about the dates set forth below, in the District of Maryland and elsewhere, the defendants,

**JAMES WILSON and
MAUREEN WILSON,**

for the purpose of executing the aforesaid Scheme and Artifice to Defraud, together with certain co-schemers known and unknown to the members of the Grand Jury, did transmit and cause to be transmitted by means of wire communication in interstate commerce writings, signs, signals, and sounds, namely:

| Count | Date of Wire | Description of Wire |
|-------|--------------|---------------------|
| 12 | November 2, 2017 | **JAMES WILSON** and **MAUREEN WILSON** transmitted or caused to be transmitted via facsimile from their home in Owings Mills, Maryland to Lincoln Benefit Life Insurance, located in Texas, a change of beneficiary form making **MAUREEN WILSON** the 8% beneficiary of Policy No. 01T1633920, which insured the life of T.S. |
| 13 | December 14, 2017 | **JAMES WILSON** and **MAUREEN WILSON** transmitted or caused to be transmitted via facsimile from their home in Owings Mills, Maryland to Lincoln Benefit Life Insurance located in Texas, a change of beneficiary form making **MAUREEN WILSON** the 10% beneficiary of Policy No. 01T1633920, which insured the life of T.S. |

18 U.S.C. § 1343
18 U.S.C. § 2

11

2020R00144/MPP/SW/SN

**COUNT 14**
**Conspiracy to Violate the Money Laundering Statutes**
**JAMES WILSON, MAUREEN WILSON**

**The Money Laundering Conspiracy and Its Objects**

1.       Paragraphs 1 through 7 of Count One of the Indictment are re-alleged and incorporated by reference.

2.       From on or about March 2, 2018 through at least December 3, 2020, in the District of Maryland and elsewhere, the defendants,

**JAMES WILSON and**
**MAUREEN WILSON,**

did knowingly and intentionally conspire and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States, to wit:

a.    money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), the elements of which are to knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce that involved the proceeds of a specified unlawful activity, to wit, mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343, knowing that the property involved in the transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity;

b.    money laundering in violation of 18 U.S.C. § 1957(a), the elements of which are to knowingly engage and attempt to engage in a monetary transaction by, through, and to a financial institution in and affecting interstate commerce in criminally derived property of a value greater than $10,000 and derived from specified unlawful activity,

2020R00144/MPP/SW/SN

to wit, mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343.

### Manner and Means

3.      The manner and means by which the defendants and their co-conspirators furthered the conspiracy included, among other things, the following:

      a.  controlling multiple bank accounts in their own names, both singly and jointly, through which they moved proceeds of their mail and wire fraud scheme;

      b.  opening bank accounts with nominee owners to make it appear that the nominee owners controlled the accounts;

      c.  conducting financial transactions with no legitimate business purpose, for example by conducting multiple transfers between the same accounts on the same day and moving money through multiple accounts over short periods of time;

      d.  causing fraud proceeds to move through bank accounts owned by others, giving the appearance the funds no longer belonged to **JAMES WILSON** and **MAUREEN WILSON**;

      e.  establishing revocable trusts that bore the names of other people, and then moving the fraud proceeds into bank accounts titled to the trusts to give the appearance the funds were not **JAMES WILSON's** and **MAUREEN WILSON's** fraud proceeds.  For example, **MAUREEN WILSON** executed the Elsie Fitz Revocable Trust Agreement establishing the Elsie Fitz Revocable Trust on March 29, 2020 and **JAMES WILSON** used the Trust Agreement to open E-Trade Account 9032 in April 2020.  In addition, **JAMES WILSON**

13

2020R00144/MPP/SW/SN

executed the Jean Peck Revocable Trust Agreement establishing the Jean Peck Revocable Trust on March 29, 2020 and used the Trust Agreement to open E-Trade Account 8090 in April 2020;

f.  transferring and causing to be transferred their fraud proceeds between various bank accounts in amounts of over $10,000 using personal checks, bank checks, wire transfers, and other means;

g.  using their fraud proceeds to purchase assets and benefit themselves by writing checks and making online transfers in amounts greater than $10,000 in funds they knew to be proceeds of their fraud scheme.

18 U.S.C. § 1956(h)

14

2020R00144/MPP/SW/SN

## COUNTS 15 through 16
## Concealment Money Laundering
## JAMES WILSON

1.      The allegations in paragraphs 1 through 7 of Count One are realleged and incorporated herein by reference.

2.      On or about the dates indicated below, in the District of Maryland and elsewhere, the defendant,

**JAMES WILSON,**

did knowingly conduct and attempt to conduct the following financial transactions affecting interstate and foreign commerce, specifically, depositing cashier's checks into PNC Account x0609 in the name of James and Maureen Wilson, each of which involved the proceeds of specified unlawful activity, that is, mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343, knowing that each transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity:

| Count | Date | Check Number | Payable to | Dollar Amount |
|-------|------|--------------|------------|---------------|
| 15 | March 18, 2020 | 0898418078 | Maureen Wilson | $1,400,000 |
| 16 | March 18, 2020 | 0898418079 | James Wilson | $2,810,000 |

18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 2

2020R00144/MPP/SW/SN

## COUNT 17
### Conducting Transaction in Criminally Derived Proceeds
### MAUREEN WILSON

1.      The allegations in paragraphs 1 through 7 of Count One are realleged and incorporated herein by reference.

2.      On or about November 7, 2019, in the District of Maryland and elsewhere, the defendant,

### MAUREEN WILSON,

knowingly engaged in a monetary transaction affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is she issued personal check number 900 drawn on BB&T Account x4158 in the name of Maureen A. Wilson and James W. Wilson for $500,000 made payable to "Schwab" and which was deposited into a Charles Schwab account ending in x0385 in the name of Maureen Wilson, such property having been derived from specified unlawful activity, that is, mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343.

18 U.S.C. § 1957(a)
18 U.S.C. § 2

2020R00144/MPP/SW/SN

## COUNT 18
### Filing a False Tax Return - Calendar Year 2018
### JAMES WILSON, MAUREEN WILSON

1.    The allegations in paragraphs 1 through 7 of Count One are realleged and incorporated herein by reference.

2.    During calendar year 2018, **JAMES WILSON** and **MAUREEN WILSON** received at least $5,705,303 in life insurance proceeds from various life insurance policies insuring the life of T.S.

3.    **JAMES WILSON** and **MAUREEN WILSON** did not report taxable income in the form of life insurance proceeds on their joint U.S. individual income tax return.

4.    On or about April 15, 2019, in the District of Maryland, the defendants,

**JAMES WILSON and**
**MAUREEN WILSON,**

residents of Owings Mills, Maryland, did willfully make and subscribe a joint U.S. Individual Income Tax Return, for the calendar year 2018, which was verified by a written declaration that it was made under the penalties of perjury and which they did not believe to be true and correct as to every material matter. That income tax return, which was filed with the Internal Revenue Service, reported Total Income on line 6 of the Form 1040 in the amount of $74,303.49, whereas, as they then and there well knew they received Total Income in addition to the amount stated in the return.

26 U.S.C. § 7206(1)

17

2020R00144/MPP/SW/SN

**COUNT 19**
**Filing a False Tax Return - Calendar Year 2019**
**JAMES WILSON, MAUREEN WILSON**

1.      The allegations in paragraphs 1 through 7 of Count One are realleged and incorporated herein by reference.

2.      During calendar year 2019, **JAMES WILSON** and **MAUREEN WILSON** received at least $2,007,919 in life insurance proceeds from various life insurance policies insuring the life of J.S.

3.      **JAMES WILSON** and **MAUREEN WILSON** did not report taxable income in the form of life insurance proceeds on their joint U.S. individual income tax return.

4.      On or about April 15, 2020, in the District of Maryland, the defendants,

**JAMES WILSON and**
**MAUREEN WILSON,**

residents of Owings Mills, Maryland, did willfully make and subscribe a joint U.S. Individual Income Tax Return, for the calendar year 2019, which was verified by a written declaration that it was made under the penalties of perjury and which they did not believe to be true and correct as to every material matter. That income tax return, which was filed with the Internal Revenue Service, reported Total Income on line 7(b) of the Form 1040 in the amount of $56,971.38, whereas, as they then and there well knew they received Total Income in addition to the amount stated in the return.

26 U.S.C. § 7206(1)

2020R00144/MPP/SW/SN

## COUNTS 20 through 21
## Aggravated Identity Theft
## JAMES WILSON

1.      The allegations in paragraphs 1 through 7 of Count One are incorporated herein by reference.

2.      On or about the dates listed below, in the District of Maryland and elsewhere, the defendant,

### JAMES WILSON,

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit 18 U.S.C. §§ 1341 and 1349, knowing that the means of identification belonged to another actual person, in violation of Title 18, United States Code, Section 1028A(a)(1).

| Count | Date | Transfer, Possession, and Use of Identification |
|---|---|---|
| 20 | February 21, 2018 | JAMES WILSON mailed a claim for death benefits to Nationwide Life Insurance for Policy No. N101712630, which insured the life of T.S., using the name, signature, and social security number belonging to Nominee 1. |
| 21 | October 25, 2019 | JAMES WILSON mailed a claim for death benefits to Nationwide Life Insurance for Policy No. N101902890, which insured the life of J.S., using the name, signature, and social security number belonging to Nominee 2. |

18 U.S.C. § 1028A
18 U.S.C. § 2

19

2020R00144/MPP/SW/SN

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1.      Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c) as a result of a defendant's conviction under any of the offenses alleged in Counts One through Seventeen of this Indictment.

### Mail and Wire Fraud Forfeiture

2.      Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of any of the offenses set forth in Counts One through Thirteen of this Indictment, the defendants,

**JAMES WILSON and
MAUREEN WILSON,**

shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

### Money Laundering Forfeiture

3.      Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of any of the offenses set forth in Counts Fourteen through Seventeen of this Indictment, the defendants,

**JAMES WILSON and
MAUREEN WILSON,**

shall forfeit to the United States any property, real or personal, involved in the offense, or any property traceable to such property.

### Specific Assets

4.      The property to be forfeited includes, but is not limited to, the following:

20

2020R00144/MPP/SW/SN

    a.  $168,228.09 seized from First National Bank Account x8573 on November 19, 2020

    b.  $637,834.30 seized from Howard Bank Account x2270 on November 19, 2020

    c.  Contents of E*Trade Account x9032 seized on November 19, 2020, currently valued at approximately $1,710,485.94

    d.  Contents of Interactive Brokers Account x1393 seized on December 3, 2020, currently valued at approximately $8,669,298.67

    e.  The real property located at 2 Valleys Crest Court, Owings Mills, Maryland 21117

    f.  A money judgment in the amount of proceeds obtained from the fraud scheme and funds involved in the money laundering

### Substitute Assets

5.     If any of the property described above, as a result of any act or omission of the defendants:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

18 U.S.C. §§ 981(a)(1)(C), 982(a)(1)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

**[signatures on the following page]**

2020R00144/MPP/SW/SN

Jonathan F. Lenzner / MPP

Jonathan F. Lenzner
Acting United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**

Foreperson

Date  09/15/2021

22