```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MARYLAND
```

                                   :
UNITED STATES OF AMERICA
                                   :
     v.                            :    Criminal No. DKC 21-360
                                   :
JAMES WILLIAM WILSON, JR.
and MAUREEN ANN WILSON             :

**MEMORANDUM OPINION**

David Stevens, Ralph Stevens, the Estate of Thomas Stevens, and Patricia Stevens filed a motion to intervene in this criminal case to assert rights to restitution as crime victims. (ECF No. 323). The proposed intervenors assert that the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A, and the Crime Victims Restitution Act, ("CVRA"), 18 U.S.C. § 3771, give them a right to move to be included in the restitution order. They also argue that the Insurance Companies are not victims and should not receive restitution awards. The Government filed an opposition, (ECF No. 329), as did James Wilson, (ECF No. 334), and Maureen Wilson. (ECF No. 332). The Stevens' filed a reply (ECF No. 333) and a supplement (ECF No. 335). For the following reasons, the request for restitution by David Stevens, Ralph Stevens, the Estate of Thomas Stevens, and Patricia Stevens will be denied.

**I.   Background**

Only a brief overview of the relevant facts will be recited here, due to the truncated nature of this proceeding and the need to rule expeditiously. The Stevens family was mentioned in documents and testimony at trial, but no one testified. Thomas and John Stevens were the insureds for most of the policies in question, and Millie Stevens (Thomas' wife) often was the initial owner. Various other family members were listed as beneficiaries from time to time. The Government's evidence was that much of the information contained in those applications was false, including the health and wealth of the applicant and the amount of existing life insurance already in place. In its opening statement, counsel for the Government said that some premiums were paid by the Stevens family and other premium payments were made by Mr. Wilson (at times with money from defrauded investors). Changes in ownership and beneficiaries were made over the years. When John and Thomas Stevens died, claims were submitted and payouts made. Several policies were paid to Stevens family members. (Gov't Ex. 502 and 503).

The three individual Stevens family members, and the Estate of a fourth, now assert that they deserve to be considered "victims" and receive restitution in the amount of $8,091,299.99, consisting of the life insurance proceeds "fraudulently misdirected." David, Ralph, and Patricia seek the proceeds from

seven policies listed in their memo, contending that they were the initial beneficiaries. (ECF No. 323-2, at 27).

The Government opposes their motion and argues that three reasons preclude treating them as victims for the purposes of restitution. First, the government asserts that no beneficiary is entitled to the proceeds of a fraud scheme and that the insurance companies are the only victims of that aspect of the fraud scheme. Second, the government argues that the movants have not provided sufficient evidence to prove that they are entitled to restitution as victim investors. Even if they had, the government contends that they received fraud proceeds that exceed any "premium" payments. Finally, the government asserts that resolving disputed and confusing facts would unnecessarily prolong the sentencing, providing a third reason to deny restitution to the movants. Maureen Wilson takes no position of the current request, but comments on whether the Government's position regarding the Stevenses is consistent with its position concerning Tracey Wise. (ECF No. 332). James Wilson continues to contest the sufficiency of the evidence for his own conviction and asserts that the Stevens' assertions actually confirm "many key aspects of Mr. Wilson's defense," including that the Stevens family provided information for the applications and paid the initial premiums. Thus, he argues that the policies were not fraudulent at inception. (ECF No. 334, at 1-2). He also argues that the face amount of the

3

policy is not the proper measure of loss to the companies and should be something less, based on what premium would have been charged had the correct information been provided. The Stevens Family members filed a reply (ECF No. 333) and a supplement. (ECF No. 335).

## II. Standard of Review

> "[F]ederal courts do not have the inherent authority to order restitution, but must rely on a statutory source" to do so. *United States v. Cohen*, 459 F.3d 490, 498 (4th Cir. 2006). Relevant here are two restitution enactments: the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, and the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A. These statutes "impose different requirements on the district court when it determines an award of restitution." [*United States v.*] *Leftwich*, 628 F.3d [665] [,] 667 [(4th Cir. 2010)]. The key difference between them is that "an award of restitution under the VWPA is not mandatory," whereas "the MVRA mandates that the sentencing court order restitution in the full amount of the victim's loss when the defendant has been convicted of certain specified offenses." *Id.* at 668.

*In re Brown*, 932 F.3d 162, 172 (4th Cir. 2019) (footnotes omitted).

> Under the CVRA, persons "directly and proximately harmed as a result of the commission of a Federal offense," 18 U.S.C. § 3771(e)(2)(A), are entitled to be afforded reasonable protection from the accused, to be notified of court proceedings involving the crime, to participate in court proceedings involving the crime, to confer with government counsel, to receive restitution, to proceedings free from unreasonable delay, to be treated with fairness, to be informed of any plea bargain, and to be informed of the

4

> rights provided under the CVRA, 18 U.S.C. § 3771(a).
>
> These rights may be asserted in the district court by the victim, the victim's lawful representative, or the Government. *See* 18 U.S.C. § 3771(d)(1), (3). The district court must "take up and decide any motion asserting a victim's rights forthwith," and if the district court denies relief, the movant may petition the court of appeals for a writ of mandamus. 18 U.S.C. § 3771(d)(3). In deciding a CVRA mandamus petition, a court of appeals "shall apply ordinary standards of appellate review." 18 U.S.C. § 3771(d)(3) (2015); *see In re Brown*, 932 F.3d 162, 172 (4th Cir. 2019) (reviewing for abuse of discretion).

*In re Ball*, No. 25-1264, 2025 WL 893230, at *1 (4th Cir. Mar. 22, 2025).

> The CVRA directs the district court to "take up and decide" any motion* asserting a victim's right. Beyond requiring the district court to make its decision "forthwith," the Act does not set forth any particular procedural requirements. It does not direct the district court to conduct a hearing or to allow oral argument to determine the rights of a purported victim. Rather, the district court's limited charge is to consider any motion asserting those rights and make a decision without delay.

*Id.* at *2.

The CVRA defines a crime victim as "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia." 18 U.S.C. § 3771(d)(3). The Stevens Family members assert harm in the form of

5

money, first the proceeds of the life insurance policies, and then possibly the money provided as premiums.

## III. Discussion

For the following reasons, the motion will be denied. The Stevens Family members have not shown that they were harmed financially, directly and proximately, by the fraud crimes of James and Maureen Wilson.

### A. Beneficiaries

The Stevens Family members contend that the insurance companies are not "victims" and are not entitled to restitution and that, instead, as initial and intended beneficiaries, they are entitled to the life insurance proceeds.

The evidence at trial established that the application for each policy contained material misrepresentations, including the health and wealth of the insured, and the amount of existing insurance. None of the policies would have been issued if the accurate information had been supplied. This is not a case in which the evidence suggested that the policy would have been issued albeit at a higher premium. The smoking and health status were important, obviously, but the fictitious net worth, income, and existing coverage information was so far off that it is clear that no coverage would have been offered.

The Stevens Family contends that they were "naïve" pawns in the scheme and duped into making payments for premiums, expecting

6

to receive the death benefits. There is no evidence of that, however. Instead, they argue that there is no evidence that they were complicit. The burden is on the party asserting victim status to prove it, however. The unsubstantiated assertions of counsel are not enough.

The Stevens Family asserts that the insurance companies cannot overcome the expiration of the contestability period and are not entitled to rescind the policies and seek restitution. The Government cites to an unpublished case from the United States Court of Appeals for the Fifth Circuit, *United States v. Bazemore*, 608 F.App'x 207 (5th Cir. 2015), for the proposition that the life insurance companies can be victims despite the passage of state law contestability periods. The upshot of that discussion is that a defendant in a mail or wire fraud case, as the Wilsons here, cannot rely on the state law contestability period to thwart their prosecution or the awarding of restitution. At this point, the question is whether the Stevens Family members can use it in their attempt to obtain restitution from the Wilsons. They cannot. Some of the insurance proceeds were seized from the interpleader actions still pending in this court and other assets were seized from the Wilsons. Any interest the Wilsons might have had in those proceeds has now been forfeited and notices to third parties will be provided. If the Stevens Family members believe they are entitled to those proceeds, the place to assert a right will be in the

7

forfeiture proceedings. In sort, the fraud by the Wilsons did not cause the Stevens Family members to be injured financially in the denial of the life insurance proceeds. They were never entitled to them in the first instance.

### B. Investor Victims

While not entirely clear, the Stevens Family members may be asserting that they were injured in the form of premium payments made to or through Mr. Wilson. The burden is on the party asserting "victim" status to prove, by a preponderance of the evidence, facts necessary for that conclusion. There is no evidence that the intervenors were defrauded by the Wilsons to induce them to make payments. As the Government argues, there are general statements only. The exhibit shows payments from Walter and Sylvia Stevens, who are not movants. The lack of particularity dooms this aspect of their quest.

The Government argues, moreover, that even if any of the movants was a victim/investor, any premium payments were more than offset by the fraud proceeds already received by the three individuals. Patricia Stevens received $2.1 million, David Stevens received $60,000, and Ralph Stevens received $120,000. (Trial Exs. 502, 503). The Government argues that, in same vein, it is not seeking restitution for two investors, Roger Bennett and Janet Isherwood, who both "profited" from their participation.

8

**IV.  Conclusion**

For the foregoing reasons, David Stevens, Ralph Stevens, the Estate of Thomas Stevens, and Patricia Stevens have not shown that they are entitled to "victim" status for the purpose of seeking restitution and their motion IS DENIED.  A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
